IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PARAGON TAX GROUP, LLC, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 11-1699 |
|  | : |  |
| BROADVIEW NETWORKS HOLDINGS INC., | : |  |
| INFOHIGHWAY COMMUNICATIONS CORP., | : |  |
| ATX COMMUNICATIONS, INC., and | : |  |
| CORRCOMM ATX, INC., | : |  |
|  | : |  |
| Defendants. | : |  |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                 **JANUARY 20, 2012**

      Presently before the Court is Plaintiff Paragon Tax Group, LLC's ("Plaintiff") Motion for Summary Judgment. Also pending before the Court is a Motion for Summary Judgment filed by Broadview Networks Holdings Inc. ("Broadview"), Infohighway Communications Corp., ATX Communications, Inc. and Corrcomm ATX, Inc. (collectively, "Defendants"). For the reasons set forth below, Paragon's Motion for Summary Judgment will be granted in part and denied in part. Likewise, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

**I. FACTS**

      The instant action is a straightforward breach of contract case.[1] Plaintiff is a seven employee company located in Pennsylvania that is primarily in the business of providing

---

[1] The Court's jurisdiction is based upon diversity of citizenship. See 28 U.S.C. § 1332.

companies Sales and Use Tax and Gross Receipts Tax audit defense and refund reviews.  (Pl.'s Mem. Law Support Mot. Summ. J. at 2.)  Defendants, Broadview and some of its subsidiaries, are Delaware corporations with their headquarters located in New York.  (Defs.' Answ. ¶¶ 8-11.)  In the Fall of November 2008, Plaintiff offered to provide certain tax related services to Broadview and some of its subsidiaries.  (Pl.'s Mem. Law Support Mot. Summ. J. at 3.)  Broadview agreed to Plaintiff's offer of its services.  (Id.)  Plaintiff authored a contract, and Broadview's CFO, Corey Rinker ("Rinker"), reviewed it forwarding it to his General Counsel, Charles Hunter, for additional review.  (Id.)  Broadview requested various changes, i.e., the deletion of an automatic renewal clause, the addition of subsidiaries and the modification of the signature box to reflect anticipated execution of the agreement by Rinker, and those changes were accepted by Plaintiff and incorporated into the contract.  (Id.)  Rinker executed the contract on behalf of Broadview, and Todd Turk ("Turk"), Plaintiff's National Tax Manager, executed the contract on behalf of Plaintiff.  (Id. at 4.)  The executed contract ("Contract") is at issue in this case.

The Contract sets forth the parties, the definition of "Tax Period" and "Refund," the scope of services to be rendered, the fee for the services, the Fee Schedule, Confidentiality and Successor clauses, the Term of the Contract, and an Agreement in Entirety clause.  (Id. at 4.)  The Contract defines the term "Refund" as:

> "Refund" shall mean all amounts (tax, interest and penalties) recovered through the refund claim process.  It shall also include refund(s) and /or reductions of: sales and use taxes, gross receipts tax, bad debt, interest (or imputed interest, if applicable) and penalties which have been either paid and/or been given notice of liability by a taxing authority as a result of an audit, and amounts which credited against another tax liability of the Client.

(Id., Ex. E (Contract)).

The "Scope of Services" section of the Complaint provides, in relevant part, as follows:

"[Plaintiff] shall examine [Defendants'] records relating to sales and use taxes, gross receipts, and bad debt for the Tax periods and, where applicable, apply for "Refunds" for [Defendants].

• Sales & Use and Bad Debt Refund review

• Gross Receipts Tax Refund Review/Audit Defense

In connection with these services, [Plaintiff] will:

***

b.  Prepare file and process the petition for Refund or Reductions of Assessment.

***

(Id., Ex. E (Contract)).

The "Fee Section" of the Contract states:

Fee:

In consideration for performance of the services rendered to [Defendants]:

• [Plaintiff] shall be entitled to receive **a Contingent Fee based solely on recovered amounts or reductions of assessments.**

• [Plaintiff] shall not be entitled to receive a Contingent Fee in the event that no assessment is reduced or refund is received by [Defendants].

• All amounts due to [Plaintiff] as a result of this Agreement shall be invoiced after a Refund has been received by [Defendants] or a credit has been applied to any obligations of [Defendants].  All amounts due to [Plaintiff] shall be due within ten (10) days of receipt of this invoice.

(Id., Ex. E (Contract)).

The "Fee Schedule" of the Contract provides:

| Contingency Fee | Contingency Fee Schedule | Cumulative Refund Amount Recovered |
| --- | --- | --- |
| 30% | Gross Receipts Tax Refund Review/Audit Defense | All refunds recovered |
| 30% | Sales & Use Tax and Bad Debt Refund Review | All refunds recovered |
| 30% | Sales & Use Tax Audit Defense | All refunds and/or reductions of assessment |

*All appeals to the administrative levels and the tax courts of the respective states in which Refund petitions are filed shall be undertaken only upon the mutual consent of [Plaintiff] and [Defendants].

(Id. Ex. E (Contract)).

The "Agreement in Entirety" Clause of the Contract provides that:

> This Agreement constitutes the entire agreement between [Plaintiff] and [Defendants]. No amendment of any provision of this Agreement shall be effective unless made in writing and signed by both [Plaintiff] and [Defendants]. Nothing in this Agreement shall be construed as an express or implied warrantee or guarantee of any type.

(Id., Ex. E (Contract)).

In late 2008 or early 2009, Plaintiff began to review Defendants' tax documents in order to discover any possible Refund opportunities pursuant to the scope the Contract. (Id. at 7.) Sometime in September of 2009, Plaintiff completed and filed an initial Gross Receipts Tax appeal which successfully obtained an initial Refund for Defendants in the amount of $22,395.00. (Id.) Turk informed Rinker of the appellate decision and, by an email dated January 26, 2009, informed him that he expected to achieve more relief going forward in the appeal. (Id.) He also informed Rinker that in order to proceed further with the appeal, Broadview was

4

required to execute Board of Review forms. (Id.) Broadview executed the documents. (Id.)

When inquiring about the status of the $22,395.00 Refund with the Pennsylvania Department of Revenue, Turk had a conversation with Ken Miller ("Miller"), an auditor with the Pennsylvania Department of Revenue. (Id.) Miller informed Turk that Defendants had two outstanding 2006 Gross Receipts Tax obligations amounting to a total of $1,198,018.00 (the "Assessments") due to a failure to report 20 million dollars in earnings. (Id.) In light of the Assessments, Miller informed Turk that the release of the $22,395.00 Refund check was being delayed pending a determination by the Pennsylvania Department of Revenue regarding whether it would be applied towards the Assessments. (Id.) Turk informed Rinker of the situation with the Pennsylvania Department of Revenue by an email dated February 25, 2010. (Id., Ex. H (Feb. 25, 2010 email)). In this email, Turk included Plaintiff's invoice for the contingency fee of 30% of the $22,395.00 Refund. (Id., Ex. H (Feb. 25, 2010 email)). Defendants paid Plaintiff the 30% contingency fee per this invoice. (Id.)

On the day that Turk sent his email, Rinker responded to Turk's email copying Stephen Cardonne ("Cardonne"), V.P. of Tax at Broadview. (Id.) Rinker asked for clarification of the email and acknowledged that Broadview never fought the determinations from the Pennsylvania Department of Revenue, and that Broadview owed the amount of the Assessments. (Id. at 7-8.) In this email chain, Turk notified Rinker and Cardonne that May 4, 2010, was the deadline to file an appeal of the Assessments and offered to file an appeal. (Id. at 8, Ex. I. (chain email)). Cardonne responded by telling Turk to "hold off" on the appeal until he examined the file and discussed the Assessments with the "auditor." (Id. at 8, Ex. I. (chain email)). On March 9, 2010, Cardonne emailed Turk, copying Rinker, requesting that Turk "[p]lease appeal" the Assessments

5

because "we did not resolve this issue." (Id. at 8, Ex. J. (Mar. 9, 2010 email)).

Turk worked on fighting the Assessments without much backup documentation. (Id.) On Defendants' behalf, Turk demonstrated to the Pennsylvania Department of Revenue that the Assessments were incorrectly assessed. (Defs.' Mem. Law Support Mot. Summ. J. at 5.) Turk showed that the Pennsylvania Department of Revenue improperly reconciled the Gross Income figure on a Gross Receipts Tax return with that on a corporate income tax form; thereby, correcting a 20 million dollar "math error" originally committed by Revenue Department. (Id.)

At an appeal hearing regarding the Assessments, Turk argued that he was not responsible for disproving the basis of the Assessments because the Commonwealth had erroneously assessed them due to a mathematical error and that, by law, he was only required to refute the basis of the Assessments. (Pl.'s Mem. Law Support Mot. Summ. J. at 9.) Additionally, Turk argues that the Commonwealth could not request the details, including documentation, of the basis of the Assessments because the statute of limitations had run. (Id.) Turk's appeal was denied. (Id.) Turk was informed that the Commonwealth wanted to see the detail of all of the nontaxable sales. (Id.)

After obtaining Defendants' permission to proceed with the appeal to the next level, Turk went to the next appellate level eventually becoming successful in convincing the auditors on the Board of Finance and Revenue that the Assessments were incorrectly assessed based upon a mathematical error and, due to the expiration of the statute of limitations, the Commonwealth could not demand to see backup detail or documentation. (Id.) The Board of Finance and Revenue agreed with Turk's argument and reduced the Assessments to zero. (Id. at 10.)

On December 21, 2010, Turk notified Cardonne and Rinker that Plaintiff was successful

at the second level of appeal granting Defendants relief from the Assessments in their entireties. (Id. at 10; Ex. L (Dec. 21, 2010 email)).  That is, they no longer owed $1,198,918.40 in Gross Receipts Tax obligations to the Commonwealth of Pennsylvania.  (Id.)  Defendants did not receive any money back from the taxing authority.  (Defs.' Mem. Law Support Mot. Summ. J. at 5.)  On or about January 3, 2011, Turk prepared and forwarded an invoice to Rinker in the amount of $359,415.40 (30% contingency fee of the $1,198,918.40 in reduction of the Assessments).  (Pl.'s Mem. Law Support Mot. Summ. J. at 10, Ex. M (Turk's email and invoice); Defs.' Mem. Law Support Mot. Summ. J. at 6).  The invoice was sent by email, and a hard copy of the invoice was sent by certified mail.  (Defs.' Mem. Law Support Mot. Summ. J. at 10.)

Upon receipt of the invoice, Cardonne contacted Turk informing him that Defendants were not going to pay the invoice, and he felt that the work should have been performed on an hourly basis.  (Pl.'s Mem. Law Support Mot. Summ. J. at 10).  Defendants offered to pay Plaintiff on an hourly basis for the work performed by Turk, who asserts that he spent approximately 100 hours on the issue and that his hourly compensation rate is between $200.00 and $400.00.  (Defs,' Mem. Law Support Mot. Summ. J. at 5.)  Defendants proffered $40,000.00 as compensation ($400.00 X 100 hours = $40,000.00).  (Id. at 6).  "Plaintiff chose to initiate this action instead of accepting Broadview's offer."  (Defs.' Mem. Law Support Mot. Summ. J. at 6.)

Plaintiff filed this suit against Defendants for the following claims: breach of contract; quantum meruit; and unjust enrichment.  Plaintiff seeks to recover $359,415.40 (30% contingency fee of the $1,198,918.40 in reduction of the Assessments) plus pre- and post-judgment interest and costs.  Plaintiff also seeks a declaratory judgment regarding appeals prepared and filed by it under the Contract on behalf of Defendants that are currently pending

7

before the Commonwealth.  Plaintiff asks the Court to declare that it is entitled to a 30% contingency fee on any Refunds that it has obtained or will obtain in the future on Defendants' behalf.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  On a motion for summary judgment, the Court may not weigh the credibility or weight of the evidence, rather, we may only determine the existence of a triable issue of fact.  Tangle v. State Farm Ins. Co., No. 08-112, 2010 WL 3420661, at *3 (W.D. Pa. Aug. 4, 2010) (citing Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party." Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents specific facts showing that there is a genuine issue for trial. See Big Apple BMW, Inc., 974 F.2d at 1362-63. "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

In cases where the language contained within a contact is at issue, summary judgment is only appropriate when the contract language is unambiguous. Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999). Whether contract language is ambiguous is a legal question. Id. In order for the United States Court of Appeals for Third Circuit to affirm a grant of summary judgment regarding contract interpretation, the Court "must conclude that the contractual language is subject to only one reasonable interpretation." Id.

### III. DISCUSSION

**A. Count I - Breach of Contract**

*1. Contract Law*

The parties argue this case under Pennsylvania law. The Contract between the parties does not contain a choice-of-law clause setting forth which state law controls. A federal court sitting in diversity must apply the substantive law of the state whose law governs the action. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1371 n.15 (3d Cir. 1996). It is undisputed that Pennsylvania law governs the interpretation and construction of the Contract.

party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents specific facts showing that there is a genuine issue for trial. See Big Apple BMW, Inc., 974 F.2d at 1362-63. "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

In cases where the language contained within a contact is at issue, summary judgment is only appropriate when the contract language is unambiguous. Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999). Whether contract language is ambiguous is a legal question. Id. In order for the United States Court of Appeals for Third Circuit to affirm a grant of summary judgment regarding contract interpretation, the Court "must conclude that the contractual language is subject to only one reasonable interpretation." Id.

### III. DISCUSSION

**A. Count I - Breach of Contract**

*1. Contract Law*

The parties argue this case under Pennsylvania law. The Contract between the parties does not contain a choice-of-law clause setting forth which state law controls. A federal court sitting in diversity must apply the substantive law of the state whose law governs the action. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1371 n.15 (3d Cir. 1996). It is undisputed that Pennsylvania law governs the interpretation and construction of the Contract.

"Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Kirleis v. Dickie, McCamey & Chilocote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).  There is no dispute that a Contract was formed between the parties regarding Plaintiff engaging in Sales and Use Tax and Gross Receipts Tax audit defense and Refund reviews on behalf of Defendants.  In fact, Plaintiff's initial Gross Receipts Tax appeal which successfully obtained an initial Refund for Defendants in the amount of $22,395.00, and a 30% contingency fee payment to Plaintiff, went smoothly according to the terms of the Contract.

The issue in this case arises from the successful effort by Turk reducing the Defendants' 2006 Gross Receipts Tax obligations to the Pennsylvania Department of Revenue from a total of $1,198,018.00 to zero by showing that the basis of the Assessments was a mathematical error. Plaintiff asserts that such work was performed pursuant to the terms of the Contract and, therefore, requires a contingency fee payment of $359,415.40 (30% contingency fee of the $1,198,918.40 in reduction of the Assessments).  Defendants argue that Turk's reduction of the Assessments was not defined by the Contract and, therefore, they do not owe a contingency fee payment of $359,415.40.  They are willing, and did offer, to pay Plaintiff $40,000.00 in hourly compensation for Turk's efforts.

The "'fundamental rule in contract interpretation is to ascertain the intent of the contracting parties.'" Lesko v. Frankford Hosp.–Bucks County, 15 A.3d 337, 342 (Pa. 2011) (quoting Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006)).  Thus, "[t]he purpose of [interpreting a contract] is to ascertain the intent of the parties as manifested by the terms." 401 Fourth St., Inc. v. Investors Ins. Grp, 879 A.2d 166, 171 (Pa. 2005).  In

ascertaining the parties' intent, "all provisions in the agreement will be construed together and each will be given effect. [Pennsylvania courts] will not interpret one provision of a contract in a manner which results in another portion being annulled." LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647–48 (Pa. 2009) (citations omitted); accord Williams v. Metzler, 132 F.3d 937, 947 (3d Cir. 1997) (where a contractual provision is ambiguous, it "must be given an interpretation consistent with the dominant purpose of the contract").

As an initial matter, "courts must determine as a matter of law which category written contract terms fall into - clear or ambiguous." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 613 (3d Cir. 1995). "The paramount goal of contract interpretation is to determine the intent of the parties." Id. (citation and quotation marks omitted); see also Am. Eagle Outfitters v. Lyle & Scott, 584 F.3d 575, 587 (3d Cir. 2009). The intent of the parties must be determined from "'the express language of the agreement'" in cases "'[w]hen the words are clear and unambiguous.'" Id. (quoting Steuart v. McChesney, 444 A.2d 659, 66 (Pa. 1982)). "'Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.'" Id. (quoting Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. 1993)). Pennsylvania law requires that "ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law." Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994); see also Am. Eagle Outfitters, 584 F.3d at 587.

"A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986). The fact that parties do not agree on the proper construction of a

contract does not render it ambiguous. <u>Duquesne Light</u>, 66 F.3d at 614. "Ambiguity in a contract can be either patent or latent. While a patent ambiguity appears on the face of the instrument, a latent ambiguity arises from extraneous or collateral facts which make the meaning of [the] written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." <u>Bohler-Uddeholm Am., Inc. v. Ellwood Grp, Inc.</u>, 247 F.3d 79, 93 (3d Cir. 2001). The issue of whether a contract is ambiguous should not be resolved in a vacuum. <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999).

### *2. Analysis*

Upon close examination of the plain language of the Contract, we find its terms to be clear and unambiguous. Plaintiff was hired by Defendants to examine their records relating to Sales and Use Taxes, Gross Receipts, and Bad Debt for the pertinent tax periods and, where applicable, apply for Refunds for the Defendants. (Pl.'s Mem. Law Support Mot. Summ. J., Ex. E (Contact)). The Contract defines Refund as:

> "Refund(s)" shall mean all amounts (tax, interest and penalties) recovered through the refund claim process. **It shall also include refund(s) and/or reductions of;** sales and or use taxes, **gross receipts tax**, bad debt, interest (or imputed interest, if applicable) and penalties which have been either paid and/or **been given notice of liability by a taxing authority as a result of an audit**, and amounts which are credited against another tax liability of the Client.

(<u>Id</u>.) (emphasis added). Plaintiff asserts that the definition of Refund clearly applies to this case because it includes a "reduction of" taxes including Gross Receipts Tax which is the subject of the dispute. (Pl.'s Surreply at 4 n.1.) Defendants assert that the Assessments do not fall within the Contract's definition of Refund. (Defs.' Mem. Law Support Mot. Summ. J. at 12-17.) We

12

find that the Assessments at issue do fall under the definition of Refund as set forth in the Contract.  Plaintiff was able to have the Assessments of Defendants' Gross Receipts Tax reduced from $1,198,918.40 to zero.  Such a "reduction of gross receipts tax" to which Defendants had been given notice of liability by the Commonwealth resulting from an audit falls squarely within the Contract's definition of Refund.

     Plaintiff was able to obtain the reduction by acting within the scope of its services as they were defined by the Contract.  Specifically, the "Scope of Services" section of the Contract states that Plaintiff, in trying to obtain a Refund, shall "[p]repare, file and process the petition for Refund or **Reductions of Assessment**."  (Pl.'s Mem. Law Support Mot. Summ. J., Ex. E (Contract)) (emphasis added).  Plaintiff informed Defendants about the situation with the Assessments when it first learned of them.  Pursuant to the Contract's language stating "*[a]ll appeals to the administrative levels and the tax courts . . . in which Refund petitions are filed shall be undertaken only upon the mutual consent of [Plaintiff] and [Defendants]," Plaintiff sought and received Defendants' permission on two separate occasions to proceed with one appeal and a final appeal specifically regarding the Assessments.  (Pl.'s Mem. Law Support Mot. Summ. J., Ex. E (Contract)).  While the circumstances surrounding the Assessments were unique, Plaintiff never acted outside the "Scope of Services" as defined by the Contract.  Although Defendants' make a reasonable argument that Plaintiff should have alerted them to the fact that they were going to be charged a 30% contingency fee of the $1,198,918.40 worth of the Assessments if the appeals were successful, the Contract did not obligate Plaintiff to do so.

     The Defendants also point to the Contract's "Fee Schedule" which has a table showing that the contingency fee of 30% applies to all Refunds recovered for Gross Receipts Tax refund

review/audit defense and Sales and Use tax and Bad Debt refund review. (Id.) The "Fee Schedule" states that the contingency fee of 30% also applies to all refunds <u>and/or reductions of assessment</u> regarding sales and use audit defense. (Id.) (emphasis added.) Defendants argue that, according to the "Fee Schedule," only reductions of assessments regarding Sales and Use Defense qualify for the 30% contingency fee. Since the issue in this case involves a reduction of assessment for Gross Receipts Tax Refund, Defendants assert that the 30% contingency fee does not apply.

There are a number of faults with Defendants' argument. First, as previously explained, Pennsylvania law requires that the contract be read as a whole in order to ascertain the parties' intentions. See <u>Murphy v. Duquesne Univ. of the Holy Ghost</u>, 777 A.2d 418, 429 (Pa. 2001) ("The whole instrument must be taken together in arriving at contractual intent."). Thus, effect must be given to all of the provisions in the Contract. See <u>LJL Transp., Inc.</u>, 962 A.2d at 647–48 (when determining parties' intent, "all provisions in the agreement will be construed together and each will be given effect"). Defendants' focus on the "Fee Schedule" in a vacuum is misguided in that it fails to give effect to all of the provisions of the Contract as a whole instrument.

The "Fee Schedule" provides a 30% contingency fee across the board. In other words, it separates out the different "Contingency Fee Service" to be performed by Plaintiff, but provides only one contingency fee rate of 30% for whatever service or cumulative Refund amount is recovered. Notably, the Contract does not provide any alternative to the 30% contingency fee payment. It is silent about any other type of payment option. This silence is deafening. If any service falls outside the scope of the "Fee Schedule," there is no provision providing an alternate

means of payment, such as a different contingency fee rate or payment based upon an hourly rate. Defendants argue that their offer, only made after receiving Plaintiff's $359,415.40 invoice, to pay $40,000.00 in a hourly rate pay is appropriate. However, the four corners of the Contract does not provide for such. Also, Plaintiff never accepted Defendants' offer for payment on an hourly basis. Defendants admit that their offer was never accepted in their Memorandum of Law in Support of their Motion for Summary Judgment by stating that "Plaintiff chose to initiate this action instead of accepting Broadview's offer." (Defs.' Mem. Law Support Mot. Summ. J. at 5.) Consequently, the parties never entered into any agreement that the $40,000.00 in hourly pay was an acceptable alternative means of payment.

    Defendants rely upon the fact that the "Fee Schedule" contains a section regarding Sales and Use Audit Defense expressly stating that the 30% contingency fee applies to all Refunds <u>and/or reductions of assessment</u> for its argument that the failure of the other sections to expressly include reductions of assessments means that they do not fit within the "Fee Schedule." Significantly, the "Fee Section" of the Contract, which is a separate section setting forth fees, states that in consideration for Plaintiff's performance of services to Defendants, "[Plaintiff] shall be entitled to receive **a Contingent Fee based solely on recovered amounts or reductions of assessments.**" (Pl.'s Mem. Law Support Mot. Summ. J., Ex. E (Contract)). This section of the Contract clearly and explicitly sets forth that Plaintiff receive a contingent fee based upon reductions of assessment. There is no separation of services and applicable contingency fees. There is only clear language that Plaintiff is entitled to a contingency fee based upon reductions of assessment. "'Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.'" Am. Eagle, 584 F.3d at 587

(quoting Krizovensky, 624 A.2d at 642).

It is important to point out that Defendants' reading of the "Fee Schedule" negates the clear language of the "Fee Section." As explained earlier, "[Pennsylvania courts] will not interpret one provision of a contract in a manner which results in another portion being annulled." LJL Transp., Inc., 962 A.2d at 647–48. Through two appeals, Plaintiff successfully earned a reduction of the Assessments and, therefore, it is owed a contingent fee as payment pursuant to the Contract.

Additionally, it is important to note that the Contract has an "Agreement in Entirety" clause. (Pl.'s Mem. Law Support Mot. Summ. J., Ex. E (Contract)). The clause states as follows:

> This Agreement constitutes the entire agreement between [Plaintiff] and [Defendants]. No amendment of any provision of this agreement shall be effective unless made in writing and signed by both [Plaintiff] and [Defendants]. Nothing in this Agreement shall be construed as an express or implied warranty or guarantee of any type.

(Id.) Frequently, as in this case, a written contract will have an integration clause expressly stating that the writing contains the entire agreement of the parties. "Although an integration clause is not conclusive that the contract is the entire contract between the parties, it is a 'clear sign' that the writing is final and complete." Claret Capital Nominees v. Bennett, No. 09-3532, 2010 WL 300288, at *3 (E. D. Pa. Jan. 25, 2010) (quoting Yocca v. Pitt. Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004)). In this case, the Contract is integrated because it is complete, provides the full set of obligations between the parties, and it contains an integration clause.[2]

---

[2] In Pennsylvania, whether a contract is fully integrated is usually analyzed in conjunction with the parol evidence rule. Claret Capital Nominees, 2010 WL 300288, at *3 (quoting Yocca, 854 A.2d at 436). The parol evidence rule "bars evidence of prior representations in a fully

16

The Court is sympathetic towards Defendants regarding the eventualities that unfolded pertaining to the very high price of the contingency fee of the Assessments. However, as the facts of this case stand, those eventualities fall squarely within the four corners of the Contract, albeit, in a seemingly harsh way. "[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties." McKenzie Constr. Inc. v. Maynard, 758 F.2d 97, 101 (3d Cir. 1985) (attorney-client relationship). The parties freely entered into the Contract. The Contract was a commercial transaction between sophisticated business entities with no allegations of fraud or undue influence. See Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991) (finding that contractual provisions were less susceptible to legal challenge where dispute surrounded "an arms'-length deal, between sophisticated commercial entities, unaffected by fraud, undue influence, or overweening bargaining power"). As the Contract stands, Plaintiff is owed a 30% continency fee of the $1,198,918.40 in reduction of that Assessments that it earned for Defendants pursuant to the terms of the Contract.

Accordingly, Plaintiff's Motion for Summary Judgment is granted regarding its breach of contract claim in Count I. Plaintiff is entitled to $359,415.40 (30% continency fee of the value of the Assessments for $1,198,918.40). The Court grants Plaintiff's request for pre-judgment interest and costs. See ECEM European Chemical Mktg. B.V. v. Purolite Co., No. 10-4343, 2011 WL 5517319, at *5 (3d Cir. Nov. 14, 2011) ("Under Pennsylvania law, the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a

---

integrated written agreement." Toy v. Metro. Life Ins. Co., 928 A.2d 186, 206-07 (Pa. 2007). The parol evidence rule is not at issue in this case.

prevailing party is entitled."); Schiller v. Royal Maccabees Life Ins. Co., 759 A.2d 942, 944 (Pa. Super. 2000) ("It has been the law in this Commonwealth for well over a century that the right to interest upon money owing upon contract is a legal right. That right to interest begins at the time payment is withheld after it has been the duty to make such payment."). Likewise, Plaintiff's request for post-judgment interest and costs is granted. See 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Defendants' Motion for Summary Judgment pertaining to Count I is denied.

### B.  Counts II and III - Quantum Meruit & Unjust Enrichment

In light of the grant of summary judgment in Plaintiff's favor regarding its breach of contract claim in Count I, Plaintiff's claims for quantum meruit and unjust enrichment in Counts II and III are denied as moot. In its Response to Defendants' Motion for Summary Judgment, Plaintiff acknowledges that it plead these Counts in the alternative if the Court did not find that the subject work fell within the Contract in Count I. (Pl.'s Response Defs.' Mot. Summ. J. and Mem. Law at 13.) Since we find in favor of Plaintiff in Count I, Plaintiff's Counts II and III are denied as moot.

### C.  Count IV - Declaratory Judgment

Plaintiff states that "there is another potential fee due to [it] in the event that they are successful in the appeals prepared and filed by Plaintiff under the Contract on behalf of Defendants that are currently pending before the Commonwealth Court." (Compl. ¶ 53.) Plaintiff requests that this Court declare that it is entitled to a 30% contingency fee of any Refunds which it has obtained or will obtain in the future on Defendants' behalf. (Id. ¶ 54.) Defendants argue that Plaintiff's request is premature and should be denied.

"[T]here is a considerable amount of discretion built into the Declaratory Judgment Act." Step-Saver Data Sys. v. Wyse Tech., Inc., 912 F.2d 643, 646 (3d Cir. 1990). In order to determine the issue of ripeness of a declaratory action, the following three factors must be met: (1) the adversity of the interests of the parties; (2) the conclusiveness of the judicial judgment; and (3) the practical help, or utility of that judgment. Id. at 647. "[I]n order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate the probability of the future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." The Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1466 (3d Cir. 1994).

Defendants argue that Plaintiff's claims in Count IV are not ripe for declaratory review because the threat of future breaches of the Contract are neither real nor substantial. We find that Plaintiff's claim rests upon hypothetical facts. The breaches of contract, which are the liability itself, depend on future events. As such, Plaintiff's request for declaratory judgment is not ripe and, is accordingly, dismissed. Defendants' Motion for Summary Judgment regarding Plaintiff's request for declaratory judgment in Count IV is granted. Plaintiff's Motion for Summary Judgment on this claim is denied.

## IV. CONCLUSION

Regarding Plaintiff's breach of contract claim in Count I, judgment is entered in favor of Plaintiff for $359,415.40, based upon the terms of the Contract. The Court grants Plaintiff's request for pre- and post-judgment interest and costs. Defendants' Motion for Summary Judgment pertaining to Count I is denied. As for Counts II and III for quantum meruit and unjust

enrichment, they are denied as moot because they were plead in the alternative regarding the outcome of Count I.  Lastly, Plaintiff's claim for declaratory judgment in Count IV is denied as unripe because liability is contingent upon future events.  Consequently, Defendants' Motion for Summary Judgment regarding Count IV is granted.  Plaintiff's Motion for Summary Judgment on this claim is denied.

      An appropriate Order follows.